JULIUS J. ESTEY & OTHERS *v.* PARLEY STARR, GEO. S. DOWLEY, L. K. FULLER, AND BRATTLEBORO & BENNINGTON R. R. CO.

*Mandamus. Railroad. Town may Rescind Vote.*

A town at one meeting may rescind its vote at a prior meeting to aid in the construction of a railroad by subscribing to its capital stock when no rights of third parties have vested, and nothing has been done under the vote.

PETITION for writ of mandamus.

*Haskins & Stoddard* and *James M. Tyler*, for the petitioners.

We insist, that under this statute which confers upon a town such extraordinary powers, and for a special purpose, the town having voted its aid, and the required assent of the tax-payers having been obtained and the necessary records all duly made, they could not annul and render inoperative such action of the town and its tax-payers had and performed under the votes of February 3d, by the rescinding votes of March 6th. The town became irrevocably bound, and it was then and is now the duty of the commissioners to subscribe for and in behalf of the town, the $66,000 capital stock so voted to be taken. The statute gives the commissioners no discretionary power whatever; they could not alter or change in any respect the votes granting aid. And as was held by the court in *Danville* v. *Montpelier & St. Johusbury R. R. Co.*, 43 Vt. 144, they were simply the agents of the town. They were to decide whether the required

assent had been obtained, and make certificate thereof. They did make such certificate and the records were all duly made. It then became their duty to carry out the direction of the town, as evidenced by the vote, assent, certificate and record, without delay and without question.

*Essex County R. R. Co.* v. *The Selectmen, &c., of Lunenburgh,* 49 Vt. 143; *Lamoille Valley R. R. Co.* v. *Fairfield,* 51 Vt. 257; *East Lincoln* v. *Davenport,* 94 U. S. 801; *Nugent* v. *Supervisors of Putnam Co.,* 19 Wall. 241; *Town of Colma* v. *Eaves,* 92 U. S. 484; *Irvin* v. *Town of Ontario,* 3 Fed. Rep. 49; *County of Moultrie* v. *Savings Bank,* 92 U. S. 631; *Western Savings Fund Society* v. *Philadelphia,* 31 Penn. St. 174; *Sacramento* v. *Kirk,* 7 Cal. 419; *Logansport* v. *Blackmore,* 17 Ind. 318; *The Justices, &c.,* v. *Turnpike Co.,* 11 B. Mon. 143.

The reported cases, as well as the text-books, make a broad distinction between acts done and performed within the scope of their *general* municipal powers, and those things *permitted* or authorized to be done under some *extraordinary and special* legislative grant without which they would be powerless to act at all. And these rules are applicable to all public and private corporations, alike.

*Bennington* v. *Park,* 50 Vt. 178; *Bank* v. *Concord,* Ib. 257; *R. R. Co.* v. *Fairfield, supra; The Asbury R. R. & Iron Co.* v. *Richie,* 7 H. L. 653; *Head & Armory* v. *Providence Insurance Co.,* 2 Cranch, 127; *N. Y. F. Ins. Co.* v. *Ely,* 5 Conn. 560; *Wiley* v. *Bank of Brattleboro,* 47 Vt. 546. See *Mason* v. *Fearson,* 9 How. 248; Ang. Cor. ch. 20, s. 6; *Rex* v. *Baker,* 3 Burr. 1267; *United States* v. *Judge Lawrence,* 3 Dall. 53.

*Martin & Eddy* and *C. B. Eddy,* for Brattleboro.

The vote of the town, the action of the commissioners, assent of the tax-payers, &c., did not create any contract relation between the town and the company—did not vest in the company any right. High Ex. Rem. 273, 389. The town had the power

to rescind the vote. Dill. Mun. Cor. s. 290; *Withington* v. *Inhabitants of Harvard*, 8 Cush. 68; *Hunneman* v. *Grafton*, 10 Met. 456; *Pond* v. *Negus*, 3 Mass. 230; *Stoddard* v. *Gillman*, 22 Vt. 568; *Cox* v. *Mount Tabor*, 41 Vt. 28; *Bigelow* v. *Hillman*, 37 Me. 58; *State* v. *Hoyt*, 2 Or. 246; *Getchell* v. *Wells*, 55 Me. 433. The writ is grantable only in the discretion of the court. Ang. Cor. 698; *Hill* v. *Goodwin*, 56 N. H. 453; High Ex. Rem. s. 9. *See* Wood Man. 96; *Pearsons* v. *Ranlett*, 110 Mass. 126; *People* v. *Regents of University*, 4 Mich. 98; *People* v. *Green*, 29 Mich. 121; *Heffner* v. *Commonwealth*, 28 Penn. St. 108; *Lyon* v. *Rice*, 41 Conn. 245.

The opinion of the court was delivered by

POWERS, J. This is a petition for a writ of mandamus to be issued to the defendants, Starr, Fuller, and Dowley, requiring them for and in behalf of the town of Brattleboro, to subscribe for sixty-six thousand dollars' worth of the capital stock of the Brattleboro & Bennington railroad company.

At a meeting of the inhabitants of the town of Brattleboro duly warned and holden on the 3d day of February, 1883, votes were legally passed, granting aid to said railroad company in the amount aforesaid; and the defendants named were appointed commissioners to carry such votes into effect according to the provisions of the act incorporating said company, approved Nov. 17, 1882, and of chap. 132 of the Revised Laws.

The same meeting further authorized said commissioners to borrow said sum of $66,000 on the credit of the town to pay for said shares of the capital stock of said railroad company. Said commissioners accepted the trust thus conferred upon them, were sworn to the faithful performance thereof, and procured and duly attested the assent of the tax-payers, as required by law, but have never proceeded to make any subscription for the stock of said railroad company, nor to borrow the money necessary for its purchase.

At the annual March meeting in said town, holden March 6, 1883, upon a proper warning therefor, said town of Brattleboro

by a decisive vote, rescinded all the votes taken at the meeting of February 3d, above recited, and thereafterwards said commissioners, doubting their authority to proceed further in the business, declined to take any further action.

The determinative question presented for consideration is, whether the action of the town at its annual meeting arrested the power of the commissioners in the premises.

The general competency of a town to rescind its votes before rights thereunder have attached, is not disputed; but it is insisted that when, as here, grants of extraordinary power are made to towns, the execution of the power by the town is conclusive upon it, and thereafterwards no *locus pœnitentiœ* remains to it.

We do not subscribe to this doctrine; and no case has been cited in which any court has subscribed to it.

There is no distinction in principle between the delegation of an ordinary and an extraordinary power to a town. In legal significance, every power conferred by the legislature upon a town is extraordinary. Without such grant it does not exist in the town. It is *extra*-ordinary because it does not otherwise exist. The usual powers exercised by towns to raise money by taxation are not inherent in the town, but exist because the legislature has conferred them. The power to raise money to build a highway comes from the same source as the power in this case, to build an improved highway. In short, towns are the creatures of the legislature, organized for governmental purposes, and deriving the quickening power of binding action from the legislature alone.

If, therefore, the town, when clothed with an optional power, may rescind action once taken in its customary municipal affairs, no reason can be assigned why it may not, under like circumstances, do the same thing, under a grant of power unusual in its municipal affairs.

But the power exercised by the town of Brattleboro in this case was not special and extraordinary in the sense counsel claim. The votes of February 3d were passed under the provisions of chap. 132, Revised Laws. That chapter confers the power to

aid in the construction of railroads upon all the towns in the State. Every town, at its option, may raise money within its specified limits, for this purpose. The power, then, has become the common heritage of all towns, and stands for consideration, precisely like other powers given by the legislature. That its exercise is guarded and restricted, does not change its quality ; it is guarded in order to protect towns against themselves.

In the case at bar, no contract had been entered into by the commissioners with the railroad company. The town had authorized its agents to make a contract, but had revoked the authority before the agents had exercised it.

No right of any third persons had been affected by the action of the town. The town in effect had merely resolved to contract for the stock of the railroad company. The contract thus resolved upon, could only be executed by making a subscription upon the books of said company, and pledging the credit of the town in payment for the stock purchased.

But it is said that the town is bound by the steps already taken, and we are referred to Sec. 2764, R. L., as authority for this position. That section reads : " When a majority of the tax-payers of the town, both in number and amount of grand list, have thus assented to the vote, it shall be binding on the town." What shall be binding on the town ? Not a contract ; not an obligation ; but the *vote* ; the *resolution* to make a contract. No further action on the part of the tax-payers as voters shall be requisite to empower the agents to act. This is the whole scope of this section.

In *Stoddard* v. *Gilman*, 22 Vt. 568, the power of the town to rescind its vote when nothing had been done under it, was expressly declared by this court. In *Cox* v. *Mount Tabor*, 41 Vt. 28, the doctrine is reaffirmed, the court saying " a town, like an individual, may change its purposes, and a town may express this change by its vote, and, unless some right in another has been acquired or has vested under its action, no one may complain of the change."

The doctrine of these cases commends itself to us as being

sound in principle, and salutary in its application to the case in hand.

The town, as appears from the case, had and could have no assurance that the enterprise introduced to its favor would result in success. Its termini were uncertain, and its prospects not flattering. It would seem, then, that it would be an unwise discretion to compel the town of Brattleboro to the unwilling embrace of a scheme she has decisively repelled.

The petition is dismissed with costs.