This was an action brought by Walter M. Ladd against the Town Council of the Town of Hudson. The plaintiff below alleged in his petition that the Town Council of the Town of Hudson had changed the channel of the Little Popo Agie River. That because of this change, during the flood season of 1925, the river cut into its bank along which an irrigation ditch supplying water to his land ran, causing the bank and ditch to cave into the river to his damage; and at another point the river was washing the bank near his farm buildings, and that he had paid out $300 in addition to his own labor filling in rock and brush to stop the wash. The answer is a general denial. The case was tried to the court without a jury and resulted in a judgment of $750 in plaintiff's favor. The case was brought here on error. For convenience the parties will be named as below. The defendant seeks to have the judgment reversed on four points: 1. That the action is barred by the statute of limitations. 2. That the judgment is not supported by sufficient evidence because no evidence whatsoever was introduced upon which a finding and decree as to the amount of plaintiff's damages can be predicated. 3. The petition is fatally defective in that it does not allege the presentation of plaintiff's claim to the town council in writing in compliance with the provisions of Section 1760, Wyo. Comp. Stat. 1920. 4. The petition is fatally defective in that it does not allege therein that plaintiff was in possession of or had the right to immediate possession of the land at the time of the alleged trespass. *Page 424 
The objection that the statutes of limitations had run against the action was not raised by demurrer or answer in the lower court. The rule is too firmly established to require discussion, that unless raised by the pleadings the question of the limitation of the action will be waived. If it is not raised at the proper time in the recognized method it is waived and cannot thereafter be set up as a defense. 37 C.J. 1213.
The work done by the Town in changing the channel of the stream was in 1914, or earlier, and was on land other than the property of plaintiff. The damage was not done until 1925. The rule in such cases is that where the obstruction or excavation is on the property of another and not necessarily permanent in character, and it cannot be ascertained at that time whether it will work an injury to the property of plaintiff, the action accrues at the time when the damage is done rather than at the time of the obstruction. Where the excavation is permanent in character, and injury naturally follows from such excavation, and the extent of the injury can be ascertained at that time the action accrues at the time of the excavation. The line of demarcation seems to be in the certainty or uncertainty of injury to plaintiff's property. Pahlka v. C.R.I. P. Ry. Co.,62 Okla. 223, 161 P. 544; C.R.I. P. Ry. Co. v. Bahr, 78 Okla. 78,188 P. 1058; Kelly v. Pittsburg C.S. St. L. Ry. Co.,28 Ind. App. 457, 63 N.E. 233, 91 Am. St. Rep. 134. It has also been held that where the cause of the injury is abatable by the expenditure of money and labor that the obstruction is not of a permanent character, and the action accrues with the injury. Ry. Co. v. Bahr, supra; Pahlka v. Ry. Co., supra.
The second point raises the question of the measure of damages for a permanent injury to real property. The plaintiff's property consisted of a tract of land containing six acres in all, of which only between three and four were irrigated. Plaintiff's theory at the trial was that he was *Page 425 
entitled to such sum in damages as would repair or reconstruct the ditch supplying water for the irrigation of his land, or in case that it was impossible or impracticable to repair or reconstruct it, then to such sum as would place water for its irrigation on the land through other means, together with such sum as he had expended in attempting to stop the cutting of the bank. The only evidence of the amount of damages he introduced with reference to the destruction of the irrigating ditch was the testimony of one witness that the only practicable means of supplying water for that purpose now was by constructing a vitrified clay pipe line eight inches in diameter and 1850 feet long at an expense of $1870.00. This witness on redirect examination stated that water could be brought from the Rogers-Clark ditch onto the land of plaintiff, at an expense of from $75 to $100, exclusive of right of way, and exclusive of the carrying right in the Rogers-Clark ditch. He did not know whether or not plaintiff could secure either of these rights. Evidence on the part of the defendant showed that with two hours work by one man water could be brought from the Rogers-Clark ditch into a ditch on plaintiff's land. Originally plaintiff and defendant used water from the same ditch. Defendant had abandoned its right therein on account of the excessive expense in keeping up the headgate, thereby casting upon plaintiff the entire burden of keeping in repair the headgate and ditch. The rule of damages, as we understand it, is that where the injury to real property is of a permanent character, or cannot be repaired except at great expense, the measure of damages is the difference between the value of the property before and after the injury. One of plaintiff's allegations in his petition with reference to damage is, "that the said lands prior to said wrongful acts of the defendant were of a market value of $2000 more than since said damage so inflicted." There was no proof offered to sustain this allegation. The excessive *Page 426 
expense of the upkeep of plaintiff's ditch and headgate, after the town abandoned its interest therein, could well have made its use impracticable. The obtaining of water from other sources for the irrigation of this small tract of land may have been so inexpensive that it would have no appreciable effect on the market value of the land. It is true that where the damage to real property is of a temporary character, or where it can be repaired at a small expense, the cost of the repair has often been held to be the measure of damages. We think, however, if plaintiff prevails in his theory that the injury was permanent, and that water could not be brought to the land except at great expense, the general rule as to the measure of damages in this class of cases would apply.
"One who destroys a private irrigating ditch is liable for the difference in the value of the land belonging to the owner without the ditch and with it." Sutherland on Damages, (4th ed.), Vol. 4, page 3760.
In Boise Valley Construction Company v. Kroeger, 17 Ida. 402,105 P. 1076, 28 L.R.A. (N.S.) 968, with reference to the measure of damages in cases of this character the court says:
"If the land is permanently injured but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of trial." Young v. Extension Ditch Co., 13 Ida. 174,89 P. 296.
In the City of Globe v. Rabogliatti, 24 Ariz. 392,210 P. 685, we find the following language:
"A different rule is applied where the injury is of such a character as to be irremediable except at great cost, or where the property cannot be restored to its former *Page 427 
condition. The damage in such cases is held to be the depreciation in the market value of the property by reason of the injury, being the difference in such value immediately before and immediately after the sustaining thereof."
In Faust v. Pope, 132 Mo. App. 287, 111 S.W. 878, in discussing the rule of damages in cases of permanent injury to real property the court says:
"It is true that there is but one rule by which his damages are to be measured, viz: the difference between the market value of his property immediately before and its market value immediately after the injury. This rule is comprehensive enough to include damages inflicted by the blasting as well as those caused by the injury to the easement, and is the only rule the instructions should have given the jury."
Pedelty, et al. v. Wisconsin Zinc Co., 148 Wis. 245,134 N.W. 356.
In the absence of any evidence to show the difference in value of plaintiff's land before and after the injury we hold that the judgment for $750 is not sustained by the evidence.
The third point urged by plaintiff in error is that the presentation of a written claim or demand to the town board is a condition precedent to the bringing of an action. Plaintiff's petition does not allege the presentation of a written itemized claim to the town board, and the record contains no evidence of such a claim having been presented to the town board for action thereon.
Section 7, Article 16, of our State Constitution provides:
"* * * and no bills, claims, accounts or demands against the state, or any county or political sub-division shall be audited, allowed or paid until a full itemized statement in writing, verified by affidavit shall be filed with the officer or officers whose duty it may be to audit the same." *Page 428 
Section 1760, Compiled Statutes 1920, provides in part:
"All claims and demands against any town organized under the provisions of this Chapter shall be presented to the town council in writing with a full account of the items, and verified by the oath of the claimant or his agents, showing that the same is correct, reasonable and just, and no claim or demand shall be audited or allowed unless presented and verified as provided in this section. * * *"
We have the same provisions with reference to presentment of claims against a county, Sec. 1416, C.S. 1920, and the additional provision that claims and demands shall be so presented before any action in any court shall be maintainable thereon. Sec. 1362, C.S. 1920. The question of the necessity of presenting a claim or demand against a county before suit can be maintained has been before this court several times. Houtz v. Commissioners, 11 Wyo. 167,70 P. 840; Commissioners v. Denebrink, 15 Wyo. 351,89 P. 7, 9 L.R.A. (N.S.) 1234. In Houtz v. Commissioners, supra, this court said:
"We do not perceive how it is possible to avoid the peremptory language of Section 1216, (now 1362) and to permit an action to be maintained upon a claim coming within its purview without positively disregarding the terms of the statute."
This language was quoted with approval in Commissioners v. Denebrink, supra. While the precise question before us here was not before the court in either of the above cases, and the expressions of the court in those cases more or less dicta, yet we think the question may be considered as settled where a county is concerned. Our next inquiry then is whether or not the same rule applies to towns, since Section 1760 does not expressly provide that no suit shall be maintainable until a verified claim in writing be *Page 429 
presented to the town board. In construing statutes like or similar to ours, the courts of other jurisdictions have not made that distinction. The weight of authority is that public policy requires that the board or council that has the authority to disburse public money should have the opportunity to inspect all claims or demands against the municipality before suit can be maintained. Public money should not be spent in useless litigation. Boards before disbursing this money should have an opportunity to investigate, compromise, and settle doubtful claims. It is therefore quite generally held that statutes like or similar to section 1760 must be complied with before bringing an action, whether the statute in specific terms prohibits the bringing of an action without a compliance therewith or not. McEwen v. Town, 112 Okla. 40, 239 P. 219; Wheeler v. City of Omaha, 111 Neb. 494, 196 N.W. 894; Bourgeois v. County Board,82 N.J.L. 82, 81 A. 358.
The objection that an itemized claim or demand was not presented to the defendant board was not raised until in this court. The question then as to whether the prohibition of the constitution and statute effects the cause of action itself or only goes to the remedy, becomes a vital one. There has arisen some confusion in the decided cases because of the failure to properly distinguish between causes of action existing at common law and those that are purely of statutory origin. We think the better reasoning to be that where the right to action was one recognized at common law, the failure to comply with the terms of the statute goes to the remedy rather than to the right itself. In many instances the statute gives a right of action against a municipality that did not exist previously and except for the statute could not be maintained. Any condition in such case imposed by statute went to the right of action and became a condition precedent to the exercise of the right. A good illustration of these causes of action is where a statute gives an injured person the *Page 430 
right to maintain an action against a municipality for an injury caused by a defective street or sidewalk and at the same time requires such person to file a claim with such municipality or the proper officer thereof, or to give notice to the municipality or some officer thereof of his intention to hold the municipality liable for the injury. In all such cases a compliance with the statute is a condition precedent to the bringing of the action, and if not complied with no cause of action exists.
This distinction is clearly stated in O'Connor v. City of Fond du Lac, 109 Wis. 253, 85 N.W. 327, 53 L.R.A. 831. The court said:
"So we see that none of the cases cited by counsel support their proposition, while Relyea v. Pulp Co., and Musenheimer v. Kellog are to the effect that charter provisions of the kind under consideration are in the nature of statutes of limitations and governed by the rules applicable thereto. If not complied with the objection must be taken by answer or demurrer or be considered waived. Care must be taken not to confuse such statutes with those imposing a condition of the existence of a right, non-compliance with the latter condition goes to the cause of action, not to the remedy for the redress of the wrong. The distinction between the two classes of rights is so clear that no one need go astray. In the one case the right depends on the statute; in the other the right is independent of statute, but its enforcement is limited and regulated by law. In the former failure to comply with the statute prevents the creation of the right, hence it is not waived by failure to raise the point by demurrer or answer, while in the latter the condition relates to the remedy only and is waived unless insisted upon by answer or demurrer. That was the rule at common law and the Statutes, (Sec. 2654, Rev. Stat. 1898) expressly preserves it. Failure to comply with a statutory condition of the use of the remedy does not go either to the jurisdiction of the court or to the cause of an action."
Since our constitution and the statutes putting it in force included all claims and demands whether existing at *Page 431 
common law or not, it evidently was the intention of the framers thereof to place the restriction upon the exercise of the right and not upon the right itself. A restriction upon the exercise of the remedy is a matter in abatement and must be raised by demurrer or answer, or will be waived.
The fourth proposition urged by defendant is that the action is one in trespass and cannot be maintained by plaintiff since he was not in possession of the property. We think the action is one on the case rather than trespass. In cases of injury to real property caused by flooding or washing of water, where the cause of the injury is placed on land other than plaintiff's, and the injury is not immediate and direct, but consequential, the action is on the case rather than trespass. 26 R.C.L. 983 and 991; 11 C.J. 9.
Thus were defendant without notice to the lower riparian owners discharges large quantities of water from his mill dam, causing injury to the lower riparian owners the action is on the case and not trespass, since the injury is consequential and not direct. Ross v. Horsey, 3 Harr. (Del.) 60; Hogwood v. Edwards,61 N.C. 350; Wabash etc. Canal v. Spears, 16 Ind. 441; 79 Am. Dec. 444. Under our statute the forms of action formerly existing have been abolished. Sec. 5555, C.S. 1920; Pomeroy, Code Rem. (3d ed.) Sec. 232. Plaintiff is seeking in this action only such damage as result from a permanent injury to real property. We think therefore possession is not a necessary prerequisite to recovery.
Because of the insufficiency of the evidence to show the amount of plaintiff's damages, the judgment must be reversed, and the case remanded for a new trial.
Reversed and Remanded.
KIMBALL, J., and TIDBALL, District Judge, concur. *Page 432