2005 WY 125

**Bonnie A. HOCHALTER; James A. Hloucal; Paige Wells; Roger Dale Brown; Gene E. Linn; Bonnie J. Driskill; J. Lee Varvaro; Steven C. Rozier; Kevin J. McGrath; and Nolan Peacock as Representatives of the Class City of Gillette, Campbell County, Wyoming Employees, Appellants (Plaintiffs),**

v.

**CITY OF GILLETTE, Wyoming, Appellee (Defendant).**

No. 05–15.

Supreme Court of Wyoming.

Sept. 28, 2005.

---

Representing Appellants: H.W. Rasmussen, Sheridan, Wyoming.

Representing Appellee: Charles W. Anderson, Gillette City Attorney; Bradley T. Cave and Matt J. Micheli of Holland & Hart, LLP, Cheyenne, Wyoming. Argument by Mr. Cave.

Before HILL, C.J., and GOLDEN, KITE, and BURKE, JJ., and KALOKATHIS, D.J.

KITE, Justice.

[¶ 1] The city of Gillette (Gillette) adopted a Personnel Policies and Procedures Manual which indicated Gillette would provide certain health and life insurance benefits to long-term employees following retirement. In 2003, Gillette adopted a revised manual which provided a limited amount of money to an irrevocable trust to fund the insurance benefits to those qualified employees and eliminated some benefits previously offered. Ten employees (Employees) filed a class action against Gillette claiming it was bound by the terms of the first manual. They sought a declaratory judgment as to their rights to receive post-retirement benefits and an affirmative injunction against Gillette requiring it to fully fund those benefits. They also claimed Gillette's action denied them benefits without due process.

[¶ 2] Gillette filed a motion to dismiss for lack of subject matter jurisdiction claiming Employees failed to comply with the Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101, *et seq.* (LexisNexis 2005) and art. 16, § 7 of the Wyoming Constitution. The district court granted the motion to dismiss and Employees appealed. We affirm.

## ISSUES

[¶ 3] Employees present the following issues:

A. Did the District Court improperly dismiss the Appellants' Complaint for lack of jurisdiction?

i. Did the Appellants comply with the Governmental Claims Act?

ii. Did the Appellants need to comply with the Wyoming Constitution?

Gillette phrases the issues as follows:

A. Is an affirmative injunction to fund retirement benefits based on an alleged contractual right to those benefits a "demand for money" under Wyoming Constitution Article 16, § 7?

B. Did Appellants' failure to submit an itemized claim as required by the Wyoming Governmental Claims Act prevent

subject matter jurisdiction in the District Court?

    C. Can Appellants act as putative representatives of a class of unidentified claimants under the Wyoming Governmental Claims Act?

    D. Did Appellants waive any federal claim exceptions to the Wyoming Governmental Claims Act by failing to raise a federal law basis of jurisdiction before the District Court?

    E. Did Appellants' Complaint fail to state a claim under 42 U.S.C. § 1983?

### FACTS

[¶ 4] For many years, Gillette offered its employees a retirement benefit package which was set out in its employee manual. For employees who had 20 years of consecutive service, Gillette offered health insurance premiums for benefits similar to those which active employees were receiving and a $5,000 life insurance policy. For employees with 30 years of consecutive service, health insurance premiums were also offered for their spouses and a $10,000 life insurance policy was to be provided upon retirement. For all retired employees, Gillette offered to pay two-thirds of unused sick leave up to 960 hours accumulated during their employment. Gillette paid all of these benefits, including the death benefit that would have been provided by life insurance, from city funds, and as such, the plan was uninsured and self-funded.

[¶ 5] In 2002, Gillette commissioned an actuarial analysis of the potential cost of continuing to pay for the retirement benefits it offered. Ultimately, the city council decided to allocate $8,000,000 to an irrevocable trust to provide retirement health benefits to everyone employed on June 30, 2003, who retired with 20 years of continuous service and the seven retirees who met that criteria. In addition, under the new plan, those same benefits would be available to the spouses of qualifying employees if they had 30 years of continuous service. With regard to the life insurance benefit, Gillette offered to immediately pay to all currently retired employees the present value of a $5,000 death benefit, but eliminated the life insurance benefit for future retirees. When the allocated funds were exhausted, the new plan contemplated no additional city funding would be made available and the benefits would no longer be offered. On December 15, 2003, the city council adopted Resolution 20–21 which established a revised manual containing the new benefit plan.

[¶ 6] On May 20, 2004, Gillette received a letter signed only by H.W. Rasmussen as counsel for and on behalf of "a group of current employees" and "all current and past employees" which purported to be the notice required by § 1–39–113, and which generally described their claims without indicating the dollar amount claimed. The names and addresses of the ten "representatives of all the employees" were attached to the letter. Those ten selected employees then filed a complaint which alleged all employees of Gillette constituted a class of potential plaintiffs asserting contractual rights against Gillette pursuant to the modification of the employment contract. The ten named plaintiffs sought, on behalf of the class, a declaratory judgment recognizing their alleged right to receive, upon retirement, payment of health and life insurance benefits and cash payment for accumulated, unused sick leave consistent with the original manual. They also sought an affirmative injunction "requiring the City as such times as may be necessary to adequately and fully fund post-retirement benefits for current employees." In two sentences, the complaint also alleged Gillette modified its "contract obligation" without just compensation and without due process. However, it failed to state the legal basis for the due process claim.

[¶ 7] The complaint alleged Employees had complied with the Governmental Claims Act by sending a notice of their claim to Gillette on May 18, 2004. Gillette filed a motion to dismiss the complaint based on the failure of the claim to comply with the Governmental Claims Act and art. 16, § 7 of the state constitution which together require the notice of claim to contain an itemized statement of the damages claimed and to be signed by the claimants under penalty of perjury. Employees' response to the motion to dismiss indicates they had previously filed an earlier action which had included specific

dollar amounts claimed, but they dismissed that action to eliminate those claims and, thus, in their opinion, eliminated the need to comply with the constitutional requirement that each claimant file an itemized statement of their claim under penalty of perjury.[1]

[¶ 8] After a hearing, the district court on December 6, 2004, entered an order granting the motion and dismissed the complaint holding that it lacked subject matter jurisdiction because the complaint was expressly based upon the Governmental Claims Act and it failed to identify the members of the class and include an itemized statement of the damages asserted and was not signed by the individual claimants under penalty of perjury. The district court cited *Beaulieu v. Florquist*, 2004 WY 31, ¶ 14, 86 P.3d 863, 868, (Wyo.2004) (*Beaulieu II*) as authority for its order. The employees filed a timely appeal.

## STANDARD OF REVIEW

[¶ 9] Our standard for reviewing a dismissal of a complaint is well established:

According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." Dismissal is a drastic remedy, and is sparingly granted. *Cranston v. Weston County Weed & Pest Bd.*, 826 P.2d 251, 254–55 (Wyo.1992) (quoting *Matter of Paternity of JRW*, 814 P.2d 1256, 1259 (Wyo.1991) (citations omitted)).

*Darrar v. Bourke*, 910 P.2d 572 (Wyo.1996). See also, *Wilson v. Town of Alpine*, 2005 WY 57, ¶ 4, 111 P.3d 290, 291 (Wyo.2005). We will sustain the dismissal of a complaint only when it is certain from the face of the complaint that the plaintiff cannot assert any facts that would entitle him to relief. *Natro-*

*na County v. Blake*, 2003 WY 170, ¶ 5, 81 P.3d 948, 950–51 (Wyo.2003).

## DISCUSSION

[¶ 10] Employees have taken a unique and somewhat contradictory position from the outset of this litigation. They have treated their claims as subject to the Governmental Claims Act, apparently conceding the claims were based upon a contract and, pursuant to § 1–39–104(a), were subject to the claim procedures of § 1–39–113, and took steps to comply with those procedural requirements. However, they purposefully filed no "itemized statement" as required by the statute because, they contend, without such amounts their claims were not subject to the requirement of art. 16, § 7 of the Wyoming Constitution that claims against the government be itemized and signed by the claimants under penalty of perjury, requirements which they admittedly did not fulfill. Additionally, Employees argue they were simply seeking a declaratory judgment on their contractual rights upon retirement and Gillette would not have been required to pay any amounts certain to them in the course of this litigation. Therefore, in their view, compliance with the constitutional provision, which contemplates actual payment of claims, was not required. In addition, Employees alleged that their retirement benefit rights were denied without due process and without compensation. However, they did not specify whether that claim was based upon federal or state law, or both.

[¶ 11] Gillette responds by pointing out Employees were also seeking an injunction which, if granted, would have required Gillette "to adequately and fully fund post-retirement benefits for current employees." Such a claim could not be made, Gillette argues, without complete compliance with the statute and art. 16, § 7 of the state constitution. In addition, Gillette contends Employees could not use a declaratory judgment to substitute for a breach of contract claim

---

1. The record contains a copy of an earlier letter to Gillette signed by the ten representative employees which was apparently intended to be the notice of claim in support of the earlier action and which included only estimates of the dollar amounts involved which were obtained from Gil-

lette's actuarial study and which indicated the health insurance benefits were estimated to cost $13,900,000, and the unused sick leave to cost less than $2,000,000. No cost estimate was provided for the life insurance benefit.

where the alleged breach, the unilateral adoption of a new manual with revised retirement benefits, had already occurred. With regard to Employees' due process claim, Gillette argues Employees waived any federal law claim by failing to plead it, and any state law due process claim would be subject to the state constitutional requirements of art. 16, § 7, which Employees admittedly failed to meet.

[¶ 12]   We find Employees' position in this litigation puzzling at best. They agree the Governmental Claims Act, which is directed to tort and contract claims against governmental entities, applied to their claims and they filed what they claimed was the requisite notice under the Act. They alleged no tort claims. Consequently, they must have been relying upon a contract claim or the Act would not have applied. Their complaint referred to the "terms of its (Gillette's) contract with City employees" as the basis for their injunctive relief claim. Yet they seem reluctant to characterize their claims as contractual and, instead, contend the declaratory judgment claim somehow transforms their action to one which does not trigger the constitutional requirements.[2]   We can find no support for that result.

[¶ 13]   Simply pleading a declaratory judgment claim does not remove the claim from the reach of the Governmental Claims Act. As we held in *Rocky Mountain Oil & Gas Ass'n v. State,* 645 P.2d 1163 (Wyo.1982), when a declaratory judgment action also involves contract or tort claims, the Governmental Claims Act applies. Likewise, in *Allen v. Lucero,* 925 P.2d 228 (Wyo.1996), where the plaintiff had tort, contract, and declaratory judgment claims, the Act applied. While Employees apparently agree with that conclusion given their concession the Act applied to their claims, they seem to be contending that because they filed a declaratory judgment action with no specific amounts claimed as currently due and owing, and not

a breach of contract claim with specific damages which Gillette must pay, they can avoid the constitutional requirements of an itemized statement signed by each claimant under penalty of perjury. In other words, under their theory, they had a governmental claim which had to comply with the statute, but not the constitution.

[¶ 14]   We find two frailties in Employees' position; first, if their claim were successful, Gillette would have been required to expend substantial funds, making meaningless their intentional omission of any monetary claim from their complaint; and second, they cite no authority for the proposition that the statute and the constitution do not both apply to all governmental claims. In construing art. 16, § 7, this Court long ago determined the wording of the constitutional provision is "sufficiently broad and comprehensive to embrace all claims and demands for money." *Houtz v. Bd. of Comm'rs of Uinta County,* 11 Wyo. 152, 70 P. 840, 843 (1902). More specifically, this Court said, the constitutional requirement applies to any "claim ... that is to be satisfied according to its terms by the payment of money." *Id.* at 842–43.

[¶ 15]   The claims in *Houtz* did not include damages based in tort or contract. Instead, Houtz requested a refund of fines that had been wrongfully collected by Uinta County. The Court concluded that even though the case was not a typical claim for money, any suit brought against a governmental entity that sought money to be paid out of the governmental entity's funds was subject to the requirements of art. 16, § 7. Similarly, we have acknowledged that a plaintiff could not use a mandamus proceeding against a public officer to avoid the requirements found in that article. *Appel v. State ex rel. Shutter–Cottrell,* 9 Wyo. 187, 61 P. 1015, 1017 (1900).

[¶ 16]   As support for their claim that not all governmental claims must comply with the constitutional provision, Employees cite

---

2.   Gillette argues a declaratory judgment is inappropriate when the relief requested is essentially damages from a breach of contract citing *Jacobsen v. King County Medical Service Corp.,* 23 Wash.2d 324, 160 P.2d 1019, 1021, (1945). We noted in *Pullar v. Huelle,* 2003 WY 90, ¶ 6, 73 P.3d 1038, 1040, n. 2 (Wyo.2003) that "there is

some question whether a declaratory judgment action is an appropriate method to seek damages for breach of contract." However, Employees counter that no breach has yet occurred because Gillette has not yet failed to pay benefits under the new policy. We need not address that issue as Employees' claims fail for other reasons.

*Beaulieu II* claiming it held the requirements of the statute and the constitution must be examined separately and that somehow supports their position. We believe Employees misread *Beaulieu II*. The question presented in *Beaulieu v. Florquist*, 2001 WY 33, 20 P.3d 521 (Wyo.2001) (*Beaulieu I*), was whether a governmental claim must comply with both the statutory and the constitutional requirements and the answer was affirmative. In *Beaulieu II*, we held the constitutional requirements were jurisdictional. In neither case, did we suggest that compliance only with the statute, and not with the constitution, could be sufficient in some cases. In fact, in *Beaulieu II*, we stated:

> "... as early as *Utah Const. Co. v. State Highway Commission*, 45 Wyo. 403, 19 P.2d 951, 953 (1933), we held that statutes granting the right to sue the state must be construed in consonance with the constitution, and that plaintiffs cannot comply with the constitution by reducing a claim to judgment and then filing that judgment as a claim against the state. The gist of that dual holding is that a claim filed with the governmental entity must meet the constitutional, as well as the statutory, requirements."

*Beaulieu, II,* ¶ 11.

[¶ 17] Either a claim is subject to the requirements applicable to a governmental claim or it is not. If it is, then it must comply with both the statute and the constitution. Certainly, there are legal claims which can be made against governmental entities pursuant to the Declaratory Judgments Act which do not constitute governmental claims subject to the Governmental Claims Act or art. 16, § 7 of the constitution. Those would include claims seeking an interpretation of a statute, a constitutional provision, or an administrative rule, or actions seeking a writ of mandamus forcing governmental entities to perform ministerial functions. See *Rocky Mountain Oil & Gas Ass'n*, 645 P.2d 1163; *Board of County Comm'rs of County of Laramie v. Laramie County School Dist. Number One*, 884 P.2d 946, 950 (Wyo.1994) (the Wyoming Governmental Claims Act expressly excludes claims for mandamus). However, when a claim is made which, if successful, will require the expenditure of governmental money in satisfaction, then the claim must comply with both the statute and the constitution.

[¶ 18] Employees' claims for a declaratory judgment concerning their contract rights to health and life insurance benefits and sick leave pay, as well as their claim for injunctive relief seeking enforcement of the original benefits, unquestionably seek the expenditure of governmental funds. As such, they must comply with both the statute and the constitution. In their opening brief, Employees conceded, "[a]ppellants did not include an itemized statement of damages asserted." Yet in their reply brief, they suggest their claims were "itemized" because they were generically described. While we are not persuaded a general description of the nature of the claims constitutes "itemization" as contemplated by the statute and the constitution, that issue need not be resolved here because Employees readily admit neither the ten individual claimants, nor the members of the class, signed the claim under penalty of perjury. The claims, having failed to comply with the constitutional requirements, were properly dismissed by the district court for lack of subject matter jurisdiction.

[¶ 19] The filing of Employees' claims as a class action does not avoid the jurisdictional requirements of the Governmental Claims Act and somehow create subject matter jurisdiction. *Mutual of Omaha Ins. Co. v. Blury–Losolla*, 952 P.2d 1117, 1120–21 (Wyo.1998). While nothing in the Governmental Claims Act prohibits the use of a class action to obtain relief for a group of claimants, compliance with the requirement that all claimants sign the claim under penalty of perjury would appear to make a class action less than feasible in a governmental claims context.

[¶ 20] Employees cite *Martineau v. Maricopa County*, 207 Ariz. 332, 86 P.3d 912 (Ct.App.2004) for the proposition that an itemized written statement is not required in a declaratory action against a government agency. However, the facts in that case are clearly distinguishable and the court's reasoning is consistent with ours in this case. The claim in *Martineau* involved a challenge

to a county policy which required constables to complete enhanced safety training in order to carry weapons in performance of their duties. The county contended the constables must first comply with Arizona's governmental claims statute which required the filing of an itemized statement of the claims. Holding the claim "would have no direct effect upon the County's financial planning or budgeting," the court concluded the itemized statement requirement of the statute did not apply. *Id.* at 916. The nature of the relief sought by the Arizona constables is far different than the relief requested by Employees in this case, *i.e.,* an injunction requiring Gillette to provide money out of its budget to fund these retirement benefits.

[¶ 21] The Arizona court also stated, "[o]ur holding today should not be understood to allow the filing of an action for monetary damages under the guise of seeking declaratory relief without first complying with statutory or administratively mandated procedures." *Id.* at 917, n. 7. Thus, rather than support Employees' arguments, *Martineau* expressly rejects the precise approach Employees took in this case. We agree with the Arizona court's reasoning that a primary purpose of the "itemized statement in writing" element of a governmental claim notice is to provide the governmental entity with warning to assist them in budgeting and financial decision making. *Beaulieu II,* ¶ 13. An injunction that would require Gillette to expend millions of dollars from its funds certainly implicates this interest. The district court correctly decided the Governmental Claims Act and art. 16. § 7 applied and Employees admitted that they failed to comply with its requirements.

[¶ 22] However, the district court did not address Employees' due process claim. As noted above, the complaint did not include any legal basis for that claim or any suggestion whether it was being made under federal or state law. Certainly, under state law, the claim would fail for the same reasons the other claims failed unless it was based upon an alleged denial of procedural due process. No such allegation is contained in the complaint or Employees' appellate briefs. If Employees intended a federal due process

claim based on 42 U.S.C. § 1983, they were required to allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40, (1988). Again, no such allegation was made. The district court's dismissal of Employees' complaint for failing to comply with the Governmental Claims Act and the state constitution does not prevent them from pursuing a federal due process claim in a separate proceeding.

## CONCLUSION

[¶ 23] We hold the district court properly dismissed Employees' claims under state law for lack of subject matter jurisdiction because they failed to comply with the Governmental Claims Act and art. 16, § 7 of the Wyoming Constitution. The claims were not itemized nor signed by individual claimants under penalty of perjury. Neither the district court's order nor this opinion addresses any claims Employees may have under federal law.